UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDWIN MARTINEZ,

        Plaintiff,

                                                    DECISION AND ORDER
                                                    16-CV-06056

        v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

_____

        Plaintiff Edwin Martinez ("plaintiff") appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is brought under the Social Security Act § 216(i) and 223(d) seeking to review the Commissioner's final determination.

        On December 14, 2012, plaintiff filed an application for disability insurance benefits which alleged disability beginning on January 16, 2012. His application was initially denied on February 14, 2013. (Dkt. #6 at 12). Plaintiff timely requested a hearing, which was held on June 17, 2014 before the Administrative Law Judge ("ALJ") Gregory M. Hamel. The ALJ rendered a decision concluding that plaintiff, a 48-year-old man with a General Education Development (GED) degree, was not disabled under the Social Security Act. (Dkt. #6 at 12-25). That decision became the final decision of the Commissioner when the Appeals Council denied review on December 3, 2015. (Dkt. #6 at 1-3).

        Plaintiff moves for judgment on the pleadings on the grounds that the ALJ's decision was the product of legal error, and was not supported by substantial evidence. (Dkt. #9). The

Commissioner opposes the plaintiff's motion, and cross-moves for judgment on the pleadings, in accordance with 42 U.S.C. § 405(g). (Dkt. #11).

## DISCUSSION

### I. The ALJ's Evaluation

An ALJ proceeds though a five-step evaluation in determining whether a claimant is disabled within the meaning of the Social Security Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 CFR § 404.1520(b). If so, the claimant is not disabled. If not, then the ALJ continues to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe," e.g., that imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. §404.1520(c). If not, the analysis concludes with a finding of "not disabled." If so, the ALJ proceeds to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ's analysis proceeds to step four, and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e), (f).

The ALJ then turns to whether the claimant's RFC permits him to perform the requirements of his past relevant work. If so, the claimant is not disabled. If not, analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not

disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)). *See also* 20 CFR §404.1560(c).

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). Nonetheless, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The same level of deference is not owed to the Commissioner's conclusions of law. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984). This Court must independently determine whetehr the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court first examines the legal standards applied, and

then, if the standards were correctly applied, considers the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). *See also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

Here, the ALJ determined that plaintiff: (1) had not engaged in substantial gainful activity since January 16, 2012, the alleged onset date; (2) had severe impairments consisting of lumbar disc disease, major depressive disorder, anxiety disorder, bipolar disorder, attention-deficit disorder ("ADD"), and attention-deficit hyperactivity disorder ("ADHD") (20 C.F.R. §404.1520(c)); (3) did not have impairment(s) that meet or medically equal the severity of one of the listed impairments (Listing 12.04, 12.06, and 12.08); and (4) was capable of performing light work. (Dkt. #6 at 17-19). *See* 20 C.F.R. §404.1567(b).

Specifically, the ALJ found that plaintiff retains the residual functional capacity ("RFC") to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (Dkt. #6 at 19). The plaintiff cannot, however, climb ladders, ropes, and scaffolds. *Id.* Plaintiff is limited to routine and repetitive tasks, and cannot perform tasks that are require more than occasional contact or interactions with coworkers. *Id.* However, the plaintiff has a normal gait, and he has a full range of motion in his cervical spine, shoulders, elbows, forearms, wrist, fingers, hips, knees, and ankles. *Id.* at 22. In addition, the plaintiff does not need assistive devices to help his normal gait. *Id.* Furthermore, the plaintiff has the ability to maintain attention and concentration for simple tasks, and he does not have memory deficits. *Id.* at 24. Because the ALJ concluded that these limitations do not substantially erode the ability to perform light work such that the Medical-Vocational Guidelines can be applied (a conclusion that plaintiff does not challenge), he applied the Guidelines to find the plaintiff "not disabled."

## II. The ALJ Did Not Rely On Gaps In The Record

Plaintiff first argues that the record upon which the ALJ relied contained obvious gaps, in that it did not include records concerning plaintiff's intelligence, or his past level of education. (Dkt. #9-1 at 13). Plaintiff argues that in light of these gaps, the ALJ should have ordered a consultative examination to be performed, in order to assess plaintiff's intellectual capabilities.

An ALJ may order a consultative examination when "[t]he additional evidence needed is not contained in the records of medical sources." 20 C.F.R. § 404.1519a(b)(1).

Here, I find that the ALJ's failure to order intelligence testing was not improper, and that the lack of evidence on that issue did not present a material gap in the record. First, there is no indication that plaintiff suffers from any intellectual impairment. Indeed, plaintiff never claimed to be disabled due to cognitive limitations; rather, he claims to be disabled due to his lumbar disc disease, depression, bipolar disorder, anxiety, ADD, and ADHD. The plaintiff has made no showing of why an intellectual examination was necessary. In addition, none of the doctors who examined or treated plaintiff diagnosed him with cognitive deficiencies.

To the contrary, the evidence of record that relates to plaintiff's intellectual functioning suggests that it is not impaired. Consulting psychologist Dr. Christine Jean-Jacques, evaluated the plaintiff and determined that his mental functioning was average, with intact attention and concentration, intact memory skills, average intellectual functioning and good insight and judgment. (Dkt. #6 at 241). Furthermore, plaintiff is able to read and write, and has earned a GED. (Dkt. #6 at 191-93). Because there was no evidence to suggest that plaintiff's intellectual abilities were compromised in the first place, the lack of additional evidence on that issue does not present a gap that triggered the ALJ's obligation to seek additional medical evidence.

The plaintiff also claims that the ALJ relied upon outdated imaging evidence to assess the extent of plaintiff's spinal impairments. (Dkt. #9-1 at 15). Specifically, the plaintiff's latest MRI was dated January 2009, three years prior to plaintiff's claimed January 16, 2012 disability onset date (Dkt. #6 at 12), and revealed L4-5 and L5-S1 neural foraminal narrowing without impingement. The plaintiff had requested, on several occasions, that the ALJ order additional imaging studies to be performed.

While an ALJ has discretion to order testing where he deems it necessary, 20 C.F.R. § 404.1519a(b)(4), I find that under these circumstances it was not. While the ALJ declined to order additional imaging studies to assess plaintiff's spine, he did order a consultative physical examination to assess the global effect of plaintiff's back pain on his exertional functioning, which was conducted by Dr. Eurenius on January 23, 2013. (Dkt. #6 at 235-38). Dr. Eurenius administered objective tests of plaintiff's exertional functioning, and found that plaintiff was in no apparent distress, had a normal gait, normal strength and normal dexterity, and needed no assistive devices, although he opined that plaintiff's lumbar disc disease caused pain which limited his ability to squat and bend. *Id*. In addition, plaintiff's most recent records from his treating physician, Dr. Smith, noted that plaintiff's back pain was "[s]table on [medication]." (Dkt. #6 at 332).

Because the record contained sufficient evidence by which the ALJ could assess the extent of plaintiff's functional limitations in light of his back pain during the relevant period, I find that the lack of an supplemental MRI report did not constitute a gap in the record.

III.  **The ALJ's RFC Finding is Supported By Substantial Evidence**

Plaintiff argues that the ALJ failed to identify the evidence that supports his RFC finding that the plaintiff is capable of performing light work. (Dkt. #9-1 at 17). As plaintiff points out,

"the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. June 19, 2007). In addition, "[b]ecause an RFC determination in a social security disability benefits case is a medical determination, an ALJ who makes and RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and thus has committed a legal error." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 343 (E.D.N.Y. July 15, 2010). The plaintiff claims that the ALJ's RFC finding was not based on the record evidence, but was based on his own, non-medical opinion, and that the ALJ failed to apply the appropriate legal standard when he declined not to grant controlling weight to the treating physician's opinions. (Dkt. #9-1 at 19).

"The treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in the record." *Villa v. Colvin*, 2015 WL 1054757 at *5 (W.D.N.Y. 2016). When the treating physician's opinion is not given controlling weight, the ALJ must explain his decision not to do so, in light of the following factors: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). If the ALJ fails to provide sufficient reasons for not crediting the treating physician's opinions, remand may be warranted. (Dkt. #9-1 at 21).

7

I believe that the ALJ's analysis of Dr. Smith's opinion was appropriate, as was the ALJ's decision not to give controlling weight to those portions of the opinion that were unsupported by objective clinical findings, and were in conflict with the other medical evidence of record.

For example, the ALJ also gave little weight to Dr. Smith's opinion that the plaintiff was limited to standing and/or walking for 2 hours a day because it was inconsistent with the other clinical evidence, including notations by Dr. Smith and Dr. Eurenius that plaintiff had a normal gait. The ALJ also gave little weight to Dr. Smith's opinion that plaintiff is unable to sit for 6 hours a day and that he experiences pain after sitting 15 to 20 minutes, as they appeared to be based solely on plaintiff's complaints, and the record contained no other evidence that the plaintiff had any difficulty sitting. (Dkt. #6 at 24). Although not conclusive on the issue, the ALJ observed that plaintiff had remained seated during his hearing for over an hour, without having to stand up or walk around. The Second Circuit has acknowledged that the ALJ may consider a claimant's demeanor at the hearing in evaluating his alleged limitations. *See Schaal v.* Apfel, 134 F.3d 496, 502 (2d Cir. 1998).

The Second Circuit has also stated that an ALJ may give the treating physician's opinion less than controlling weight if it is in conflict with his treatment notes. *Cichocki v. Astrue*, 534 Fed. App'x 71, 75 (2d Cir. 2013). In the case of Dr. Smith, plaintiff's treatment records consistently reflect that plaintiff's pain and symptoms were well-controlled by medication. (Dkt. #6 at 320, 398, 406, 408, 409).

Overall, because Dr. Smith's opinions of plaintiff's standing, walking, lifting and sitting abilities, as well as his opinions on plaintiff's ability to perform full-time work, were inconsistent with, and unsupported by, his clinical notes, the ALJ did not err in declining to afford them controlling weight.

Plaintiff also contends that the ALJ failed to rely on a medical opinion to support his conclusion that the plaintiff can perform light work. (Dkt. #9-1 at 24). To the contrary, the ALJ assigned great weight to Dr. Eurenius's opinion that the plaintiff was moderately limited in bending, lifting, carrying, pushing, pulling, sitting, or standing due to chronic back pain, and incorporated the bulk of Dr. Eurenius's findings into his RFC assessment. Those limitations were consistent with the ability to perform light work, and even if the ALJ's RFC finding did not "perfectly correspond" with any one opinion out of the medical sources of record, I find that his RFC findings properly weighed, and took account of, all relevant opinions and treatment records. *See Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (unpublished opinion).

IV.   **The ALJ's Credibility Determination Was Proper**

Lastly, plaintiff argues that the ALJ failed to evaluate the plaintiff's credibility pursuant to the factors in 20 C.F.R. §404.1529 and 416.929. These factors include the plaintiff's ability to perform daily activities, and plaintiff's symptoms (including pain, intensity, and duration, to the extent consistent with the objective medical evidence). 20 C.F.R. §404.1529. This Court has acknowledged that a claimant's "performance of daily activities is not necessarily a clear and convincing reason to discredit a [claimant's] testimony." *Beck v. Colvin*, 2014 WL 1837611 at *14 (W.D.N.Y. 2014).

I find that the ALJ considered the appropriate factors in evaluating the plaintiff's subjective complaints. He acknowledged that the plaintiff has a physical impairment that could reasonably be expected to produce plaintiff's back pain and other symptoms, but also considered the plaintiff's activities of daily living, noting, for example, that plaintiff was working 15-20 hours per week, was able to walk normally and did not require an assistive device to ambulate. The ALJ also considered the effect of plaintiff's mental impairments, but determined that the plaintiff's self-

described problems with attention and memory were not supported by any evidence of record, as mental examinations of plaintiff showed only normal findings. I find that the ALJ's credibility finding considered the appropriate factors, and that his evaluation was proper. I see no reason to disturb it.

## CONCLUSION

For the foregoing reasons, I find that the ALJ's decision was supported by substantial evidence of record, that the record did not include any material gaps, and that the ALJ considered the proper factors in assessing plaintiff's credibility. Plaintiff's motion for judgment on the pleadings (Dkt. #9) is denied, the Commissioner's cross motion for judgement on the pleadings (Dkt. #11) is granted, and the ALJ's finding that plaintiff is not disabled is in all respects affirmed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 21, 2017.